[No. 3067, Jan. 15, 1927]

## STATE v. CURRY

[252 Pac. 994]

### SYLLABUS BY THE COURT

1. Where the verdict of the jury is not supported by substantial evidence, judgment upon such verdict will be set aside on appeal.

2. Larceny is the felonious stealing and carrying away, etc., of the personal property of another; every larceny including a trespass to the possession, which cannot exist unless the property was in the possession of the person from whom it is charged to have been stolen.

Appeal from District Court, Quay County; Hatch, Judge.

W. T. Curry was convicted of the larceny of a cow, and he appeals. Reversed and remanded for a new trial.

James L. Briscoe, of Tucumcari, for appellant.

J. W. Armstrong, Atty. Gen., and J. N. Bujac, Asst. Atty. Gen, for the State.

### OPINION OF THE COURT

BICKLEY, J. **[1]** Appellant was convicted of the charge of larceny of one neat cattle, under the provisions of chapter 123, Laws of 1921, which is amendatory of section 1613, Code 1915. The indictment charges that the said animal was the property of Ethel McMurren, who is the wife of J. C. McMurren. It appears that Mr. McMurren made some kind of a deal with Doc Curry, son of the defendant, whereby J. C. McMurren was to trade a cow belonging to Ethel McMurren to Doc Curry for the cow here in question. The animal which was the subject of the alleged larceny had been in the McMurren pasture between 65 and 70 days. Some difficulty arose over the transaction

[1] 17CJ p. 262 n. 76; 36CJ p. 903 n. 35. [2] 36CJ p. 747 n. 7.

between the McMurrens and Doc Curry, and on September 10, 1924, J. C. McMurren took the cow in question and put her in the pasture known as the Curry horse pasture, for the reason, as Mr. McMurren stated, Doc Curry did not carry out his part of the transaction and the McMurrens wanted to avoid the expense of keeping the cow any longer, and called off the trade, and for the purpose of releasing the McMurrens from the trade and of turning the cow back to the possession of Mr. Curry. All the acts of J. C. McMurren with regard to the cow and in making the trade and in calling off of the trade and in returning the cow to the Curry pasture were with the full knowledge and consent of Ethel McMurren. The McMurrens, nor either of them, ever had a bill of sale to the cow. Some litigation arose over the transaction in the justice of the peace court. When this litigation commenced or when it ended cannot be definitely determined from the record. The McMurrens were unsuccessful in the litigation and lost the case. Apparently the McMurrens were held to the trade by which they had acquired the animal in question. The record is so vague as to what this litigation was about that we think that the testimony concerning it has no probative value whatever. The McMurrens had never been to look for the cow (except through a telescope), and never requested the defendant or any other member of the Curry family to return the cow to him or his wife, had never sent any person to look for the cow, and had not asked the brand inspector to get her, or made any attempt whatever to get the cow back into their possession. McMurren said that he had been warned to stay out of the Curry pasture, and he did not think it expedient to go there himself. Circumstances were elicited on the hearing from which it could be inferred that ill feeling existed on the part of the McMurrens against appellant. This witness stated that he looked for the cow with a telescope from points of from 100 yards to half a mile away.

On November 6, 1924, the defendant killed a cow. and sold the beef to J. C. Robbins, of Tucumcari, N.

M., and on December 8, 1924, sold the hide to Bassett Collins, of Tucumcari, and the animal so killed is the subject of the alleged larceny. The hide was identified by Mr. McMurren and others as being the hide of the animal returned to the Curry pasture on September 10, 1924. The brand on the hide was a cross on the right hip. The defendant and a son testified that the McMurrens' cow had been in the Curry pasture, and, in fact was there at the time of the trial. In the testimony it appears that defendant and Doc Curry and other sons of the defendant referred to the Curry pasture as ''their'' pasture, and Mr. McMurren stated that he did not know whether it was Doc Curry's pasture or W. T. Curry's—that all of the Currys referred to it as ''their'' pasture. The defendant, W. T. Curry, whose character was not impeached, testified that he supposed that the cow which he killed was his. That he had 22 cows branded the same way as the cow in question—that they were mostly Hereford cattle, bald-faced, red in color; that he had half a dozen nearly alike, and he thought the cow he killed was his own. Two other witnesses, testifying on behalf of the defense, stated that they were cowmen with considerable experience, and that they were on the McMurren place in June or July, and that McMurren showed each of them a cow he got from Doc Curry in a trade, and which was in the McMurren pasture, and made some remark as to her value. The witnesses stated that they had since seen the same cow two or three weeks before the trial (March, 1925), in the Curry pasture.

On the other hand, other witnesses called by the state thought the defendant's witnesses were mistaken in their identification of the cow they saw in the Curry pasture as being the one they had seen at the McMurren premises.

It will thus appear that there was some element of uncertainty concerning the identity of the cow which was killed by the defendant, although this has only an indirect bearing upon the decision.

The appellant assigns ten alleged errors challenging the sufficiency of the evidence to support the verdict, the correctness of certain instructions given by the court, and the correctness of the ruling of the court in refusing instructions tendered by defendant, and presenting the proposition that there is a vital variance between the allegatoins of the indictment and the proof, in that the proof shows that if any crime was committed by the defendant it was the crime of embezzlement of an animal, and not larceny.

The section of the statute upon which the indictment was predicated enumerates three distinct crimes, namely: (1) Stealing of animals; (2) embezzlement of animals; and (3) knowingly killing or otherwise depriving the owners of animals of their immediate possession. See Territory v. Cortez, 15 N. M. 93, 103 P. 264. In State v. Anaya, 28 N. M. 283, 210 P. 567, we said that an indictment alleging that on a day certain the defendant, having been intrusted with a certain number of sheep of the property of a named person, embezzled and fraudulently converted the same to his own use, states an offense under section 1613, Code 1915. There seems to be no doubt, therefore, that the section in question embraces embezzlement and larceny as distinct offenses. The indictment is in one count and charges the defendant with larceny alone. It was held in State v. Roberts, 18 N. M. 480, 138 P. 208, that in an indictment which alleges that the defendant "did steal, take and knowingly drive away" the animal, it is not necessary to allege that the owner was thereby deprived of its immediate possession, and in that case we said that if the defendant did feloniously steal, take, and drive away the animal, necessarily the owner was deprived of the immediate possession of the animal. And in the indictment in the case at bar, it is alleged that the defendant did "unlawfully and feloniously deprive the said owner of the said one neat cattle of the immediate possession thereof." That larceny is an offense against possession there can be no doubt. In this respect it is distinguished from embezzlement.

"It is this element of trespass which distinguishes larceny from the crime of embezzlement. In embezzlement the possession of defendant is lawful and the wrong consists in the criminal misappropriation of the thing possessed. In larceny defendant's possession is at no time lawful, for this felonious intent vitiates the consent with which he obtains the possession, and hence the wrong consists not in the misappropriation, but in the original taking." 36 C. J. "Larceny," § 133.

In a case note in 13 Ann. Cas. p. 882, the distinction is stated in this manner:

"The crimes of larceny and embezzlement are distinguishable in that in the latter the property comes lawfully into the possession of the taker, and is unlawfully appropriated by him, whereas in the former the property is unlawfully taken and retained."

See, also, Bishop on Criminal Law (9th Ed.) §§ 794-799.

It is not worth while to multiply citations.

In State v. Liston, 27 N. M. 500, 202 P. 696, we said:

"Before a case of larceny is complete, there must, of course, be evidence of an unlawful taking and asportation."

Asportation is defined as follows:

"A taking out of the possession of the owner, without his privity and consent. * * *" 5 C. J. 607.

In this case the alleged owner of the cow in question, Ethel McMurren, did not deny the facts as testified to by her husband, J. C. McMurren, heretofore referred to. Her testimony in regard to the cow, and from which asportation must be inferred, is as follows:

"Q. You may state whether or not you gave any one any permission to take that cow from you. A. No, sir; I didn't.

"Q. You may state whether or not the cow was taken or killed; was it with or without your consent and knowledge? A. It was killed without my consent."

We do not think that there is any substantial evidence from which it can be concluded that the cow was taken from the possession of Ethel McMurren by the defendant. In effect, she herself sent it to the pasture of the defendant with the intention of dis-

claiming any right, title, or interest in the animal. The litigation in the justice court apparently caused the McMurrens to repent of having relinquished possession of the cow and having attempted to put the possession thereof back in Doc Curry by putting her in the Curry pasture, over which apparently the defendant had control. This repentance, however, did not show itself in works in the nature of an attempt to repossess the cow. There is not a bit of evidence to show that the McMurrens ever again regained possession of the cow in question. Whether the defendant, W. T. Curry, made an honest mistake in killing a cow which did not belong to him or whether he embezzled a cow in his possession belonging to Ethel McMurren is beside the question. He is not indicted for embezzlement, but for larceny.

We believe the facts in this case fail to show a criminal intent on the part of appellant, and we are fully satisfied that they do not show that the appellant did take, steal, and carry away and deprive Ethel McMurren of the immediate possession of the cow in question. Indeed, it is contended with much show of reason that Ethel McMurren repudiated title and ownership, as well as possession, when the trade was called off and the cow taken back to the Curry pasture—that is, in so far as the animal might become the subject of larceny from her.

The verdict not being supported by substantial evidence, the trial court should have sustained appellant's motion for a directed verdict.

[2]    It is argued by appellant that the court erred in giving instruction No. 9, which is as follows:

"I further instruct you that it is necessary under the charge laid in the indictment that the property alleged to have been stolen be in the possession of the person from whom it is claimed the same was stolen; however, in this connection I charge you that actual physical custody of such property is not necessary to constitute possession within the sense or within the purview of the larceny statutes, it being sufficient that the taking be from the place where the property was left by the real owners so long as he retains his ownership in such property, and

when one leaves property at any place without any intent to abandon and relinquish his ownership therein, one taking such property from such place takes the same from the possession of the owner although the actual custody thereof may not be in the owner at that particular time of larceny."

The instruction is correct as an abstract statement of law. Doubtless under the testimony in this case, the phrase, "it being sufficient that the taking be from the place where the property was left by the real owner so long as he retains his ownership in such property," should be explained so as to avoid confusion in the minds of the jury. Ordinarily, the language employed is used in connection with the theft of a chattel which has been left by the owner at a place over which he has some control, either actual or constructive. For instance, it is frequently said that animals on their accustomed range are in the possession of the owner, althugh not in the actual possession of such owner. But it seems to us that where the owner of an animal puts it in a place over which he has no control through ownership, by agreement, or otherwise, the principle announced in the instruction is not applicable.

In view of our decision, we do not consider it necessary to decide upon other points presented by appellant. ·The judgment is reversed and the cause remanded for a new trial; and it is so ordered.

PARKER, C. J., and WATSON, J., concur.